UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

IVAX PHARMACEUTICALS, INC. )
4400 Biscayne Boulevard )
Miami, FL 33137 )
 )
                Plaintiff, )
 )
   v. )   Case No. _____
 )
MICHAEL O. LEAVITT )
Secretary, Health and Human Services )
U.S. Department of Health and Human Services )
200 Independence Avenue SW )
Washington, DC 20201 )
 )
U.S. DEPARTMENT OF HEALTH )
AND HUMAN SERVICES )
200 Independence Avenue SW )
Washington, DC 20201 )
 )
ANDREW C. VON ESCHENBACH )
Acting Commissioner of Food and Drugs )
U.S. Food and Drug Administration )
5600 Fishers Lane )
Rockville, MD 20857 )
 )
FOOD AND DRUG ADMINISTRATION )
5600 Fishers Lane )
Rockville, MD 20857 )
 )
                Defendants. )
 )

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

IVAX Pharmaceuticals, Inc. ("IVAX") brings this action for declaratory and injunctive relief against Michael O. Leavitt, Secretary of the U.S. Department of Health and Human Services; the United States Department of Health and Human Services; Andrew C.

von Eschenbach, Acting Commissioner of Food and Drugs; and the United States Food and Drug Administration (collectively "FDA"). In support thereof, Plaintiff states the following:

## Nature of the Action

1. IVAX brings this suit based on the final agency action embodied in the October 24, 2005 letter of Steven K. Galson, Director, Center for Drug Evaluation and Research, denying Citizen Petition 2005P-0008/CP1 filed by IVAX Pharmaceuticals, Inc., and petition 2005P-0046/CP1 filed by Buc & Beardsley, on behalf of Ranbaxy Laboratories Ltd. That letter provided that the FDA had decided that neither IVAX nor Ranbaxy were entitled to a statutory period of generic exclusivity for 5-mg, 10-mg, 20-mg, and 40-mg strengths of simvastatin and 80-mg strength simvastatin respectively and further provided that the FDA had properly delisted U.S. Patent Nos. RE 36481 ('481 patent) and RE 36520 ('520 patent) from the *Approved Drug Products with Therapeutic Equivalence Ratings* (the Orange Book).

2. IVAX was the first to submit an abbreviated new drug application ("ANDA") containing a "paragraph IV" certification for a generic version of Merck and Company's brand-name drug Zocor® in the 5-mg, 10-mg, 20-mg, and 40-mg strengths. In its application, IVAX challenged two patents that Merck had listed as claiming Zocor®, the '481 patent and '520 patent, entitling IVAX to 180-day exclusivity for the 5-mg, 10-mg, 20-mg, and 40-mg dosage strengths. The active ingredient in Zocor® is simvastatin.

3. After IVAX had filed its ANDA, Merck requested that the FDA remove the listing of the '481 and '520 patents from the Orange Book as patents claiming Zocor®. FDA did so prior to the expiration of IVAX's 180-day exclusivity. As a consequence, FDA has nullified IVAX's 180-day exclusivity period.

4.      The FDA removed the '481 and '520 patents from the Orange Books at Merck's request solely because Merck had not filed a lawsuit for patent infringement against IVAX and IVAX had not successfully defended such a lawsuit.

5.      The FDA decision contravenes both the Hatch-Waxman Act and the Administrative Procedure Act and fails to embody principles of reasoned agency decision-making. It is contrary to the D.C. Circuit's decision in *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998), and is arbitrary, capricious, or otherwise contrary to law.

6.      As a result, IVAX seeks declaratory and injunctive relief from this Court to, *inter alia,* (1) set aside the FDA Letter as contrary to law, an abuse of discretion, and arbitrary and capricious; (2) declare unlawful the delisting of the '481 and '520 patents prior to the expiration of IVAX's exclusivity; (3) enjoin the FDA from approving ANDAs filed subsequent to IVAX's for 5-mg, 10-mg, 20-mg, and 40-mg simvastatin tablets except as consistent with IVAX's 180-day exclusivity; and (4) at the very least, require the FDA to reconsider its analysis in light of *Mova* and reasoned decision-making.

**Jurisdiction and Venue**

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This action arises under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Act"), *codified at, inter alia,* 21 U.S.C. § 355; the Administrative Procedure Act, 5 U.S.C. § 706(2); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## Parties

9. Plaintiff IVAX is a Florida corporation with its principal place of business in Miami, Florida. IVAX is a wholly owned subsidiary of IVAX Corporation, which is also headquartered in Miami, Florida.

10. Defendant Michael O. Leavitt is the Secretary of Health and Human Services and the official charged by law with administering the FDCA. Secretary Leavitt is sued in his official capacity. Secretary Leavitt maintains offices at 200 Independence Avenue, S.W., Washington, D.C., 20204.

11. Defendant United States Department of Health and Human Services is an executive department administered by Secretary Leavitt, with responsibility under the FDCA for regulating drugs marketed in the United States.

12. Defendant Andrew C. von Eschenbach, the Acting Commissioner of the FDA, has the delegated authority to administer the drug approval provisions of the FDCA. Acting Commissioner von Eschenbach is sued in his official capacity. He maintains offices at 200 C Street, S.W., Washington, D.C. 20204 and 5600 Fishers Lane, Rockville MD, 20857.

13. Defendant United States Food and Drug Administration is the agency within the United States Department of Health and Human Services charged with overseeing, *inter alia,* the human drug approval process, pursuant to the FDCA.

## FACTUAL ALLEGATIONS

### The Hatch-Waxman Act and 180-Day Exclusivity

14. The approval of generic drugs is governed by the FDCA, as amended by the Hatch-Waxman Act. *See* 21 U.S.C. §§ 301 *et seq.* Although the Hatch-Waxman Act was amended as part of the Medicare Act of 2003, the amended act did not take effect until

December 8, 2003, and does not apply to ANDAs filed before that date such as those at issue in this case. *See* Pub. L. No. 108-173 § 1102(b)(1).

15. Generic drugs contain the same active ingredients, and provide the same therapeutic value, as branded drugs. They are, however, generally sold at a lower price to consumers, private insurers, and public insurers. Congress enacted the Hatch-Waxman Act to increase the availability of generic drugs by expediting the process of bringing them to market, and thereby significantly reduce the cost that the public pays for pharmaceuticals. The Hatch-Waxman Act provides an expedited approval process within the FDA and grants generic drug companies significant incentives to encourage them to bring their products to market.

16. In order to expedite the approval process for generic drugs, the Hatch-Waxman Act permits generic companies to obtain approval of their generic products so long as they can show them to be bioequivalent to products that the FDA has already deemed safe and effective. Before marketing a generic drug, the manufacturer must submit an abbreviated new drug application, or ANDA, to the FDA. 21 U.S.C. § 355(j). The ANDA establishes the bioequivalence and therapeutic value of the generic product as compared with the branded product. 21 U.S.C. § 355(j)(2)(A). So long as bioequivalence can be established, a generic drug manufacturer need not repeat the safety and efficacy studies that were conducted on the branded version of the drug and included as part of the brand manufacturer's new drug application ("NDA"). *Id.*

17. In the ANDA, the generic manufacturer also must address, and provide a certification concerning, each patent listed in the Orange Book by the NDA-holder as claiming the drug. The generic maker can certify, *inter alia,* that the listed patent is invalid and/or will not be infringed by the manufacture, use, or sale of the generic drug for which the ANDA is

5

submitted. Such a certification is known as a Paragraph IV certification. *See* 21 U.S.C. § 355(j)(2)(A)(vii)(IV). Notice of a Paragraph IV certification must be provided to the patent holder as well. 21 U.S.C. § 355(j)(2)(B). A Paragraph IV certification signals the intent of a generic manufacturer to market its product prior to the expiration of the patents on the branded drug. The filing of an ANDA containing a paragraph IV certification is deemed to constitute a statutory act of infringement, which creates subject matter jurisdiction to enable a federal court to hear and determine the patent infringement suit.

18. The Hatch-Waxman Act, by design, encourages generic drug companies to challenge pharmaceutical patents by filing Paragraph IV certifications in order to bring generic products to market faster. The first generic drug company to file a Paragraph IV certification, and thereby challenge a patent, generally bears costs of research and development, legal costs to identify potentially vulnerable patents, as well as the litigation costs that may come from protracted patent infringement litigation. If this generic drug company succeeds in being the first to successfully file a Paragraph IV ANDA, however, the benefits of those investments may ultimately be shared with other generic drug companies, who can benefit from the substantial investments that the first filer has made.

19. Therefore, in order to encourage generic drug companies to bear the costs associated with being the first filer of a Paragraph IV ANDA certification, the Hatch-Waxman Act provides that the first filer will receive the exclusive right to market the pertinent generic product for 180 days following the challenge. 21 U.S.C. § 355(j)(5)(B)(iv). The Act prohibits the FDA from approving the ANDAs of the subsequent filers until the 180-day exclusivity period has elapsed.

20.   The 180-day exclusivity period runs from the earlier of the date on which the first-filing generic drug company first commercially markets the generic drug or "the date of a decision of a court in an action ... holding the patent which is the subject of the certification to be invalid or not infringed." 21 U.S.C. § 355(j)(5)(B)(iv)(II).

21.   The FDA may not approve the applications of subsequent ANDA filers until the 180-day exclusivity period expires. Once the 180-day exclusivity ends, however, other generic manufacturers may enter the product market. By successfully challenging the brand-name patent in court, the subsequent filer can start the clock on the 180-day exclusivity period.

22.   Depriving the first filer of the benefits of exclusivity undermines the incentive system that Congress carefully constructed in the Hatch-Waxman Act to ensure that generic drugs are brought to market as early as possible for the benefit of consumers.

**Simvastatin**

23.   Merck holds the approved NDA for simvastatin, No. 19-766, which it sells as Zocor®. Simvastatin is in a class of medications called HMG-CoA reductase inhibitors, also known as statins. Statins slow the production of cholesterol in the body and, thus, are prescribed for those suffering from atherosclerosis.

24.   Merck initially submitted one patent to the FDA as claiming Zocor®, U.S. Patent No. 4,444,784 (the "'784 patent"). The '784 patent expires on June 23, 2006. Merck later amended its NDA to list two additional patents, the '481 patent and the '520 patent. All three patents were listed in the Orange Book as of December 14, 2000.

25.   On December 14, 2000, IVAX filed ANDA No. 76-052 seeking approval for generic simvastatin in 5-mg, 10-mg, 20-mg, and 40-mg doses. IVAX's application included a Paragraph IV certification with respect to the '481 and '520 patents. By filing a Paragraph IV

7

ANDA, IVAX certified its belief that the generic product described in the application would not infringe those patents and/or that the patents were invalid.

26. In the same ANDA, IVAX filed a Paragraph III certification with respect to the compound patent, the '784 patent. The Paragraph III certification means that IVAX does not challenge the validity of the '784 patent, and believes that the '784 patent stands in the way of marketing the generic product described in the ANDA. Therefore, the FDA will not grant final approval to the ANDA until the expiration of the '784 patent in June 2006.

27. On information and belief, IVAX was the first company to file a Paragraph IV certification for generic pravastatin sodium in 5-mg, 10-mg, 20-mg, and 40-mg doses.

28. Merck did not sue IVAX within 45 days of receiving IVAX's Paragraph IV certifications. Merck has not sued any ANDA applicant for infringement as a result of a Paragraph IV certification to the '481 or '520 patent.

### FDA's Action

29. On October 10, 2003, Merck submitted a letter requesting that the '481 and '520 patents be removed from the list of patents claiming Zocor® in the Orange Book.

30. On September 2004, FDA removed the '481 and '520 patents from the Orange Book before IVAX had exercised its 180 days of exclusivity.

31. The FDA's decision to prematurely remove the '481 and '520 patents from the Orange Book would permit the agency to approve all ANDAs for simvastatin in 5-mg, 10-mg, 20-mg, and 40-mg doses without regard to IVAX's exclusivity.

### Citizen Petition

32. In September 2004, IVAX learned that FDA had delisted the '481 and '520 patents from the Orange Book.

33. On January 12, 2005, IVAX submitted a Citizen Petition, pursuant to 21 C.F.R. § 10.30 and Section 505 of the FDCA, requesting that FDA not approve subsequent ANDAs for simvastatin tablets for 180 days from the date of first commercial marketing of simvastatin under IVAX's ANDA No. 76-052, and that the FDA reinstate the '481 and '520 patents in the Orange Book and require subsequent ANDAs for simvastatin tablets to contain certifications to the '481 and '520 patents.

34. On October 24, 2005, the FDA denied IVAX's citizen petition in a letter from Steven K. Galson, Director, Center for Drug Evaluation and Research.

35. The FDA denied the petition solely because the '481 and '520 patents were not the subject of litigation and, thus, IVAX would not be "successful" or "prevail" in challenging the patents.

## FIRST CAUSE OF ACTION
### (Violation of the FDCA and the APA)

36. The FDA decision to delist the '481 and '520 patents from the Orange Book prior to the expiration of IVAX's 180-day exclusivity violates the FDCA, and is in excess of statutory authority, arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and is therefore in violation of 5 U.S.C. § 706.

37. The FDA's October 24, 2005 letter of Steven K. Galson denying IVAX's and Ranbaxy's Citizen Petitions was not based on reasoned agency decision-making. The distinction drawn by the FDA between patents (for which Paragraph IV certifications have been filed) that are the subject of litigation, and those that are not the subject of litigation, is in excess of statutory authority, arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

38. The FDA's October 24, 2005 letter of Steven K. Galson was contrary to the D.C. Circuit's decisions in *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) and

*Purepac Pharmaceutical Co. v. Friedman*, 162 F.3d 1201 (D.C. Cir. 1998), as well as this Court's decisions in *Inwood Labs., Inc. v. Young*, 723 F. Supp. 1523 (D.D.C. 1989), *vacated as moot*, 43 F.3d 712 (D.C. Cir. 1989), and *Mova Pharm. Corp. v. Shalala*, 955 F. Supp. 128 (D.D.C. 1997), and is thus in excess of statutory authority, arbitrary, capricious, an abuse of discretion or otherwise contrary to law.

39.  The FDA decision to delist the '481 and '520 patents and the October 24, 2005 letter denying IVAX's and Ranbaxy's Citizen Petitions constitute final agency action that is subject to judicial review. IVAX has exhausted every available administrative avenue and has no adequate remedy at law.

40.  Neither defendants nor any other entity will suffer cognizable harm if the relief requested herein is granted, and the public interest will be served by such relief.

41.  The FDA's delisting of the '481 and '520 patents and denial of IVAX's statutory exclusivity period for generic simvastatin will cause substantial and irreparable harm to IVAX.

42.  The FDA's unlawful conduct has caused, is causing, and will continue to cause substantial harm to IVAX unless and until the FDA's actions are declared unlawful pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the FDCA, and the agency is enjoined from approving ANDAs filed subsequent to IVAX's for 5-mg, 10-mg, 20-mg, and 40-mg simvastatin except as consistent with IVAX's 180-day exclusivity.

## PRAYER FOR RELIEF

WHEREFORE, IVAX prays that this Court:

A.  Vacate the FDA's October 24, 2005 letter as contrary to law, an abuse of discretion, and arbitrary and capricious;

B.  Declare that the delisting of the '481 and '520 patents was unlawful;

C. Enjoin the FDA from approving ANDAs filed subsequent to IVAX's for 5-mg, 10-mg, 20-mg, and 40-mg simvastatin except as consistent with IVAX's 180-day exclusivity;

D. Alternatively, direct the FDA to reconsider the delisting of the '481 and '520 patents and the denial of IVAX's 180-day exclusivity period based on the requirements of 21 U.S.C. § 355(j)(5)(B)(iv), *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998), and principles of administrative law;

E. Provide such further relief as the Court may deem just and proper.

Dated: November 7, 2005

        Respectfully submitted,

        HYMAN, PHELPS & MCNAMARA, P.C.
        700 Thirteenth St. N.W., Suite 1200
        Washington, D.C. 20005
        202-737-5600
        202-737-9329 (facsimile)
        Robert A. Dormer, Bar no. 267641
        rad@hpm.com
        Douglas B. Farquhar, Bar no. 386573
        dbf@hpm.com

By: _/s/ D. B. F._
        Douglas B. Farquhar

        STEARNS WEAVER MILLER WEISSLER
        ALHADEFF & SITTERSON, P.A.
        150 West Flagler Street
        Suite 2200
        Miami, FL 33130
        (305) 789-3200
        (305) 789-3395
        Jay B. Shapiro (*pro hac vice* motion forthcoming)
        jshapiro@swmwas.com
        Samuel O. Patmore (same)
        spatmore@swmwas.com